**Randolph Jack GARRETT, Plaintiff,**

v.

**AUTOZONE, INC., Defendant.**

**No. Civ.A. 9:98CV163.**

United States District Court,
E.D. Texas,
Lufkin Division.

Oct. 20, 1999.

Alex Arthur Castetter, Stuckey & Garrigan, Nacogdoches, TX, for plaintiff.

Bethany L. Brantley, S. Mark Klyza, Robert J. David, Jr., The Kullman Firm, New Orleans, LA, Stephen D. Wakefield, J. Wilson Eaton III, The Kullman Firm, Memphis, TN, for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

Pending before the court is the Motion for Summary Judgment filed by the defendant Autozone Inc. ("Autozone"). After reviewing the motion, the submissions, and the applicable law, the court has determined that the motion should be GRANTED.

## I. FACTS

Plaintiff brings suit against Autozone alleging disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Plaintiff also has asserted a state law claim for intentional infliction of emotional distress. Plaintiff alleges his employment with Autozone was terminated because he suffers from a disability. Defendant subsequently filed the present motion for summary judgment claiming entitlement to judgment as a matter of law.

Plaintiff worked as a part-time salesman at Autozone's Nacogdoches, Texas store. In early June of 1997, plaintiff began suffering from stomach pain and diarrhea. Because of his discomfort, plaintiff visited Dr. V.R. Pokala's office where several tests were performed in an attempt to diagnose plaintiff's ailments. Later that month, plaintiff returned to Dr. Pokala's office where he was told by Dr. Pokala's

partner, Dr. Guniganti, that he was suffering from lupus.[1] Lupus is primarily a disease of the connective tissues, manifesting itself by way of skin lesions, arthritis, and joint pains. The disease may present symptoms of fatigue, fevers, and weakness. *See* STEDMAN'S MEDICAL DICTIONARY 1001 (26th ed.1995).

After returning to work, plaintiff informed his co-workers and managers that he had been diagnosed with lupus. Plaintiff continued to work at Autozone and was given the same work assignments he had received prior to his visit with Dr. Guniganti. Plaintiff contends that he was forced to work outside in excessive heat which caused him great discomfort due to his ailments.

On July 24, 1997, plaintiff was fired from Autozone for misappropriating company funds.[2] Plaintiff contends that the real reason he was fired was because he suffered from a disability. Plaintiff points to instances where other employees have misappropriated company funds and not been fired as evidence supporting his contention.

In February, 1999, plaintiff was examined by his own expert doctor, Dr. Peter Schur, who is a rheumatologist. Dr. Schur informed the plaintiff that he probably did not have lupus. Dr. Schur stated in his expert report that plaintiff had a "risk of having lupus of considerably less than 15%." (Garrett Aff. ¶ 21). Accordingly, plaintiff amended his complaint stating that he is disabled since he suffers from folliculitis and "fibromyalgia-like" problems. (Amended Complaint, ¶¶ 1, 15).

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. Pro. 56(c). Thus, summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir.1990).

In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, neither "the mere existence of some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, 106 S.Ct. 2505, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), is sufficient to overcome a motion for summary judgment.

### B. ADA Claim

■ In order to bring a successful claim under the ADA, plaintiff Garrett must show that he suffers from a disability as

---

1. The parties dispute this contention. Dr. Guniganti contends that he never diagnosed plaintiff with lupus, rheumatoid arthritis, or any condition other than a back strain although he cannot recall having any specific conversations with plaintiff. (Guniganti dep. pp 8–12). Nevertheless, since this is a motion for summary judgment all inferences will be drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Ra-*

dio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

2. Plaintiff admits removing money from Autozone's cash register for personal use which was a violation of Autozone company policy. However, even plaintiff's former manager, Graham Heflin, admits that he does not believe that plaintiff intended to steal the money. (Heflin dep. p. 50).

defined in the Act. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1119 (5th Cir.1998). The Act defines "disability" in three ways:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;

(B) a record of such impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

■ If Garrett's condition does not rise to the level of a disability as defined in the Act, then he cannot recover under the ADA even if Autozone terminated him on its account. *See Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051, 1053 (7th Cir.1997) ("The Act is not a general protection of medically afflicted persons.... [I]f the employer discriminates against them on account of their being (or being believed by him to be) ill, even permanently ill, but not disabled, there is no violation."). Here Garrett contends the he is protected under the Act because he meets the definition of "disabled" under either section (A) or (C) of 42 U.S.C. § 12102(2).

### 1. Substantially Limited— 42 U.S.C. § 12102(2)(A)

First, Garrett contends that he is protected under 42 U.S.C. § 12102(2)(A) because he suffers from a physical impairment that substantially limits a major life activity. Garrett does not indicate how his impairment substantially limits one or more of his major life activities.[3] The Equal Opportunity Commission's ("EEOC") regulations interpreting the ADA define "[m]ajor [l]ife [a]ctivities" to include "functions such as caring for one-

self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Moreover, these same regulations define "substantially limits" to mean that the person is either "[u]nable to perform a major life activity" or is "significantly restricted as to the condition, manner or duration" under which the individual can perform the major life activity as compared to the average person in the general population. *Id.* at 1630.2(j)(1). The only possible major life activity that could be substantially limited based on the pleadings would be working.

■ The Supreme Court has recently clarified what constitutes being substantially limited in the major life activity of working. "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton v. United Airlines*, 527 U.S. 471, 119 S.Ct. 2139, 2151, 144 L.Ed.2d 450 (1999). The plaintiff fails to meet this burden. Garrett has produced scant evidence to show that his impairment substantially limits his ability to work. Garrett provides no evidence of the number of jobs from which he is precluded because of his impairment. The plaintiff has admitted that he can work in a variety of jobs. *See* Plaintiff's dep. pp. 176–177. Plaintiff admits that he can work most jobs that do not require "sport type activities". *Id.* In fact, plaintiff has worked a variety of jobs since he was fired from Autozone. *See id.* at 226–231. Without some evidence that Garrett is precluded from a broad range of jobs, his impairment does not meet the definition of disability under 42 U.S.C. § 12102(2)(A).[4] *See Foreman v. Babcock*

---

**3.** Garrett has only contended in rather conclusory fashion that he "was Actually Terminated Due to his Disability or Perceived Disability." (Plaintiff's Motion Opposing Summary Judgment).

**4.** It must be noted that plaintiff's diagnosis regarding fibromyalgia occurred approxi-

mately 18 months after he was fired from Autozone. There is no evidence whatsoever that plaintiff suffered from this ailment while he was working at Autozone. Thus, summary judgment is also appropriate on this basis as well.

*& Wilcox Co.,* 117 F.3d 800, 806 (5th Cir. 1997) (holding that a plaintiff who could not perform some jobs because he wore a pacemaker was nevertheless still capable of performing most jobs in the workforce); *See also, Skorup v. Modern Door Corp.,* 153 F.3d 512, 513–14 (7th Cir.1998) (finding that a plaintiff who suffered from fibromyalgia failed to show that she was disabled under the ADA); *Zimmerman v. General Motors,* 959 F.Supp. 1393 (D.Kan. 1997) (finding that a plaintiff who suffered from fibromyalgia was not disabled within the meaning of the ADA); *Aquinas v. Federal Express Corp.,* 940 F.Supp. 73 (S.D.N.Y.1996) (same).

## 2. Regarded As—42 U.S.C. § 12102(2)(C)

■ Garrett also claims that he is disabled under the "regarded as" prong of the ADA; i.e. that Autozone perceived him as having a disability that substantially limited a major life activity. The issue is whether Autozone perceived Garrett's impairment to be sufficiently severe to substantially limit a major life activity. In *Sutton,* the Supreme Court stated that there are two ways in which a plaintiff may fall within this definition of disability. The first situation is where an employer mistakenly believes that a person has an impairment that substantially limits one or more major life activities. *Sutton,* 527 U.S. at ——, 119 S.Ct. at 2150. The second way to meet the "regarded as" definition of a "disability" is by proving that an employer mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. *Id.*

■ In both situations, Autozone's knowledge of Garrett's impairment or work limitations alone does not imply that Autozone has regarded Garrett as suffering from an impairment which substantially limits a major life activity. *Kelly v. Drexel Univ.,* 94 F.3d 102 (3d Cir.1996).

"For an employer to regard an impairment as substantially limiting work, the employer must regard an individual as significantly restricted in his ability to perform a class or broad range of jobs." *Hamilton v. Southwestern Bell Tel. Co.,* 136 F.3d 1047, 1052 (5th Cir.1998) (citing *Burch v. Coca–Cola Co.,* 119 F.3d 305, 322 (5th Cir. 1997) and *Bridges v. City of Bossier,* 92 F.3d 329, 332 (5th Cir.1996)). Garrett has offered no evidence that Autozone regarded him to be so limited. Garrett's own testimony demonstrates that he was treated in the same manner as he was before he informed Autozone that he had been diagnosed with lupus.[5] *See* Garrett's Dep. pp 170–174, 200, 202. Because Garrett did not create a genuine issue of material fact as to whether he was regarded as disabled by his employer, Autozone is entitled to summary judgment. *See Deas v. River West, L.P.,* 152 F.3d 471, 480 (5th Cir. 1998) (holding that an employer did not regard the plaintiff as disabled); *Southwestern Bell,* 136 F.3d at 1052; *Sherrod,* 132 F.3d at 1121 (plaintiff was not regarded as disabled because employer attempted to find other employment for her); *Foreman,* 117 F.3d at 806–807 n. 10 (finding the plaintiff was not regarded as disabled because he was invited back to work); *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 728 (5th Cir.1995) (finding no regarded as discrimination).

## C. Intentional Infliction of Emotional Distress

■ Garrett has also brought a state law claim for intentional infliction of emotional distress. To recover under this claim in Texas, Garrett must prove that: (1) the defendant acted intentionally or recklessly; (2) the conduct was "extreme and outrageous"; (3) the actions of defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Standard Fruit & Vegetable Co. v. Johnson,* 985 S.W.2d 62,

---

**5.** As mentioned earlier, it is now clear that Garrett does not actually suffer from Lupus.

64 (Tex.1998) (citing *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993)).

The Fifth Circuit has recognized that an employer's conduct, even if a violation of existing law, rises to the level of "extreme and outrageous" in only "the most unusual cases." *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir.1994) (citations omitted). The Texas Supreme Court has stated that a defendant's conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" in order for a plaintiff to recover under the tort of intentional infliction of emotional distress. *Twyman*, 855 S.W.2d at 621 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)).

 In this case, Garrett has alleged that Autozone manager's gathered information regarding his illness, forced him to work in excessive sunlight knowing it was harmful to him, failed to accommodate his ailments, and discharged him for taking money from the cash register when other non-disabled employees did this all the time without being fired. These allegations even if true do not constitute intentional infliction of emotional distress under Texas law. There are very few cases in Texas allowing intentional infliction of emotional distress claims in wrongful termination cases. *See, e.g., Havens v. Tomball Community Hosp.*, 793 S.W.2d 690 (Tex.App.1990). The cases which have allowed recovery were based on extended and ongoing harassment of an employee. *See id.* The incident with excessive heat happened exactly one time. This incident further demonstrates that Garrett was not regarded as disabled by his employer since they asked him to do the same work that was required of other employees. Since the incident happened only one time, as a matter of law in Texas it cannot be outrageous. Furthermore, Garrett was fired in private at the end of his shift and wished the best by his manager. These actions are not outrageous. In this case, it simply cannot be said that Autozone conducted Garrett's firing in an outrageous manner. *See Wornick Co. v. Casas*, 856 S.W.2d 732 (Tex.1993).

### III. CONCLUSION

For the reasons stated above, the court finds that plaintiff fails to establish a prima facie case of discrimination because he is not disabled within the meaning of the ADA. Consequently, plaintiff's claim does not survive defendant's motion for summary judgment. Moreover, plaintiff's allegations do not establish a claim for intentional infliction of emotional distress. It is the opinion of this court, therefore, that defendant's motion for summary judgment should be GRANTED.